# United States District Court
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| BITCO NATIONAL INSURANCE CO. | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-0486-S |
| | § | |
| WESTCHESTER SURPLUS LINES | § | |
| INSURANCE COMPANY | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant Westchester Surplus Lines Insurance Co.'s Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Rule 12(b)(6) [ECF No. 73]. For the following reasons, the Court **DENIES** the Motion.

## I.     BACKGROUND

This insurance dispute flows from an accident in West Texas and the resulting state court litigation. According to the state court pleadings, on September 7, 2017, Aaron Callaway ("Callaway") was attempting to excavate a trench for Solaris Water Midstream, LCC's ("Solaris") pipeline construction project in Midland County, Texas. Second Am. Compl. ¶¶ 6-8. Callaway worked under the supervision of MPS Enterprises Inc., d/b/a Milford ("Milford"), the general contractor for the Solaris pipeline. *Id.* Milford operated under the terms of a "Services Agreement," which contained a written request that Solaris be named as an additional insured "for ongoing and completed operations on a primary and noncontributory basis, in each of [Milford's] policies required under this Agreement, except Worker's Compensation and Employer's Liability." *Id.* ¶ 12. During the attempted excavation, a pipeline in the ground allegedly ruptured and exploded, injuring Callaway. *Id.* ¶ 7. As a result, Callaway filed a lawsuit in Texas state court arguing that both Milford and Solaris breached duties of care owed to him. *Id.* ¶ 6.

Plaintiff BITCO National Insurance Co. ("Plaintiff") issued a commercial general liability policy to Milford effective April 1, 2017, to April 1, 2018, with limits of $1 million per occurrence and $2 million in the aggregate. *Id.* ¶ 13. Defendant Westchester Surplus Lines Insurance Co. ("Defendant") also issued a policy to Milford, titled the "Contractors Pollution Liability Form – Westchester Elite Form" (the "Westchester Policy"). *Id.* ¶ 18. When Solaris tendered the Calloway lawsuit to Plaintiff and Defendant, and requested a defense, Plaintiff provided Solaris a defense as an additional insured. *Id.* ¶¶ 16, 17, 20. Defendant, however, refused to defend or indemnify Solaris in the Callaway lawsuit. *Id.* ¶ 20. Plaintiff ultimately paid to fund the settlement of the claims against Solaris. *Id.* ¶ 20.

Plaintiff filed this action to assert a subrogation claim against Westchester, arguing that Westchester breached its obligations to Solaris as an additional insured under the Westchester Policy. *Id.* ¶¶ 22-23. Defendant timely filed the pending Motion, which is now ripe and before this Court.

## II.     LEGAL STANDARD

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility does not require probability, but a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences,

2

or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

### III.    ANALYSIS

Plaintiff asserts a subrogation claim, which "allows the person who pays the loss or satisfies the claim of another person under a legally obligation or interest to substitute himself for that other person and assert his rights." *Stafford Metal Works, Inc. v. Cook Paint & Varnish Co.*, 418 F. Supp. 56, 58 (N.D. Tex. 1976) (citation omitted). In this action, Plaintiff asserts that it defended Solaris and thereby satisfied Defendant's obligation under the Westchester Policy. *See* Second Am. Compl. ¶ 20 ("[Defendant] refused to defend or indemnify Solaris in the Callaway Lawsuit. [Plaintiff] assumed the defense of Solaris . . . and therefore has assumed involuntarily an obligation that should have been borne by Westchester."). Thus, Defendant's Motion turns entirely on whether Defendant had any obligation to defend Solaris as an additional insured.

"Under Texas law, the same general rules apply to the interpretation of contracts and insurance policies." *Aubris Res. LP v. St. Paul Fire & Marine Ins.*, 566 F.3d 483, 486 (5th Cir. 2009) (citation omitted). "An insurer's duty to defend is governed by the eight-corners or

complaint-allegation rule." *Colony Nat'l Ins. v. United Fire & Cas. Co.*, 677 F. App'x 941, 944 (5th Cir. 2017). The Court, therefore, only looks to the "pleadings in the underlying lawsuit and the insurance contract between the insurer and insured, to determine if the insurer has a duty to defend." *Id.* (citing *King v. Dall. Fire Ins.*, 85 S.W.3d 185, 187 (Tex. 2002)). "If a provision has more than one reasonable interpretation, a court must interpret it in favor of the insured, provided that interpretation is not unreasonable and even if the insurer's interpretation is *more* reasonable." *Aubris Res. LP*, 566 F.3d at 486 (citation omitted).

Here, the additional insured endorsement amended the insureds under the Westchester Policy "to include as an insured the person or organization shown in the scheduling." Def.'s App. 35-36. The Schedule lists:

> Any person or organization that is an owner of real or personal property on which you are performing operations, or a contractor on whose behalf you are performing operations, *and* only at the specific written request of such person or organization to you, wherein such request is made prior to commencement of operations.

*Id.* (emphasis added). For Solaris to qualify, it must (1) "be a contractor on whose behalf [Milford was] performing operations" and (2) Solaris must have made a "specific written request" to be included as an additional insured on the policy prior to the commencement of the operations. *Id.* The Court finds that the Complaint contains sufficient allegations to state a subrogation claim.

First, the Court finds that Plaintiff sufficiently pleaded that Solaris was a contractor within the meaning of the Schedule. *See* Second Am. Compl. ¶¶ 6-8 (alleging that Milford was a general contractor in a contract with Solaris). The parties disagree on what "contractor" means in the context of the Schedule. Defendant argues that the Solaris cannot be an additional insured under the Policy because "contractor" means "one that formally undertakes to do something for another; one who contracts on predetermined terms to provide labor and materials and to be responsible for the performance of a construction job in accordance with established specifications or plans."

4

Reply 2-3 (quoting *First Tex. Bank v. Carpenter*, 491 S.W.3d 729, 731 n.12 (Tex. 2016)). Plaintiff, however, argues that "contractor" simply means "any party to a contract." Surreply 3 (quoting *Contractor*, BOUVIER'S LEGAL DICTIONARY). Under this less restrictive meaning, the Plaintiff's claim satisfies the first prong of the Westchester Policy's coverage requirements. Having been asked to choose between two reasonable definitions of "contractor,"[1] and viewing the Complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff sufficiently pleaded that Solaris was a contractor within the meaning of the Schedule. *See St. Paul Fire*, 566 F.3d at 486; *Sonnier*, 509 F.3d at 675.

The Court further finds that Plaintiff sufficiently pleaded that Solaris made a "specific written request" to be included as an additional insured on the policy prior to the commencement of the operations. The Complaint states that Solaris made a written request for insurance coverage, requiring MPS to "name [Solaris] as additional insureds for ongoing and completed operations . . . in each of [MPS's] policies required under [the parties'] Agreement, except Worker's Compensation and Employer's Liability." Second Am. Compl. ¶ 12. Moreover, the same agreement specifically required MPS to obtain "Sudden & Accidental . . . Pollution coverage." Br. in Supp. Mot. to Dismiss 6; Resp. 5-6. Viewing the complaint in the light most favorable to Plaintiff, the Court finds that these allegations are sufficient to show that Solaris made a "specific written request" to be included as an additional insured on the policy prior to the commencement of the operations.[2]

---

[1] The parties offer up the two most common meanings of "contractor." *See Contractor*, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining "contractor" to mean either (1) "[a] party to a contract" or (2) "one who contracts to do work for or supply goods to another").

[2] While the parties disagree on the interpretation of "specific written request" as used in the Policy, *see* Resp. 5-7; Reply 4, the Court must draw all inference in Plaintiff's favor and, therefore, will not adopt Defendant's interpretation of the Policy at this stage of the litigation. *See Paul Fire*, 566 F.3d at 486; *Sonnier*, 509 F.3d at 675.

## IV.      CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Dismiss.

**SO ORDERED.**

SIGNED May 29, 2020.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**

6